# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

**SANTANDER CONSUMER USA INC.,**

    *Plaintiff*,

**v.**                                      **Case No. 5:24-CV-00249-JKP**

**THE CITY OF SAN ANTONIO AND**      **Consolidated Cases:**
**ALANIS WRECKER SERVICE INC,**              **5:21-CV-00172-JKP**
                                            **5:24-CV-00323-JKP**

    *Defendants*.

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Santander Consumer USA Inc.'s ("Santander") Motion for Summary Judgment, (*ECF No. 30*); Defendant The City of San Antonio's ("the City") Cross-Motion for Summary Judgment, (*ECF No. 31*); and Defendant Alanis Wrecker Service Inc.'s ("Alanis") Cross-Motion for Summary Judgment, (*ECF No. 34*). All parties filed responsive briefings. *See ECF Nos. 30, 31, 34, 43, 50, 51*. Additionally, at the Court's request, all parties filed supplemental briefings limited to Santander's 42 U.S.C. § 1983 cause of action asserted against the City and Alanis for violation of its Fourteenth Amendment rights. *ECF Nos. 53, 54, 55, 56*.

Following a comprehensive review of the record, providing due consideration to the parties' briefings, the summary judgment evidence, and the applicable law, the Court now concludes Santander's Motion for Summary Judgment, (*ECF No. 30*), shall be DENIED; the City's Cross-Motion for Summary Judgement, (*ECF No. 31*), shall be GRANTED; and Alanis' Cross-Motion for Summary Judgment, (*ECF No. 34*), shall be GRANTED.

## FACTUAL BACKGROUND

This case arises out of Defendant The City of San Antonio ("the City") and Defendant Alanis Wrecker Service Inc.'s ("Alanis") vehicle impoundment and disposal procedures.

Specifically, Plaintiff Santander Consumer USA Inc. ("Santander") challenges the City and Alanis' vehicle impoundment and disposal procedures as to thirty-four vehicles it holds, or held, security interests in. *ECF Nos. 1, 18, 30-1*. The facts, taken from the record—including Santander's Amended Complaint, the parties' Joint Statement As to Agreed Facts Not In Dispute, and the Declaration of Edward Vargas[1]—and in the light most favorable to Santander, are as follows. *See id.; ECF No. 30-1; ECF No. 107* (Cause No. 5:21-CV-00172).

Prior to the facts at issue in this litigation, non-party customers purchased the thirty-four vehicles that are the subject of this suit ("the Vehicles") from non-party dealerships. *ECF No. 30-1 at 2*. To finance the Vehicles, the customers entered into retail installment contracts. *Id. at 2*. The dealerships then assigned the retail installment contracts to Santander, "an automotive finance company in the business of taking assignments of retail installment contracts relating to the purchase of motor vehicles, servicing those contracts, and holding liens in the vehicles to secure payment under those contracts." *Id. at 1*. Following assignment of the retail installment contracts, Santander obtained liens on the Vehicles. *Id. at 2–3*.

The City owns and operates the San Antonio Vehicle Storage Facility ("VSF"), recognized at law as a municipal storage facility. *ECF No. 107 at 1* (Cause No. 5:21-CV-00172). The City contracts with Alanis, a Texas corporation, to operate the VSF. *Id*. San Antonio Ordinance Ch. 19, Art. II, Div. 3, Sec. 19-51 through 19-55 ("the Ordinance") establishes the City and Alanis' vehicle impoundment and disposal procedures. *Id*.

---

[1] Portions of the Declaration of Edward Vargas that are disputed pursuant to the City and Alanis' pending Motions to Strike are not included. *See ECF Nos. 30-1, 32, 33*.

The City seized and directed the impoundment of the Vehicles at various times in 2018, 2019, 2020, and 2024. *Id. at 2; ECF No. 30-1 at 8–9*. As stipulated, the City seized the Vehicles with probable cause to do so. *ECF No. 107 at 2* (Cause No. 5:21-CV-00172).[2]

After being towed to the VSF, for each of the Vehicles, Alanis sent Santander two Notices. *Id. at 2*. The initial notice ("First Notice") "informs the owner and lienholder of the tow, where the vehicle is being stored, the fees charged, and how to request a hearing." *Id. at 2*. The subsequent notice ("Second Notice") "warns the owner and lienholder that the vehicle will be deemed abandoned if not recovered within [twenty] days of the notice." *Id. at 2*.

Both the First Notice and the Second Notice "state that a lienholder—including Santander—may request a hearing pursuant to [C]hapter 2308 of the Texas Occupations Code and [C]hapter 683 of the Texas Transportation Code." *Id. at 3*. "These provisions permit a party to challenge the propriety of the tow and the towing and storage fees assessed." *Id. at 3*. As stipulated, Santander received all of the First Notices and Second Notices for the Vehicles. *Id. at 2; ECF No. 30-1 at 7, 11*. Santander did not request any hearings for the Vehicles. *ECF No. 30-1 at 8*.

Without requesting any hearings, in order to retrieve the Vehicles Santander needed to satisfy the conditions for release pursuant Section 19-54 of the Ordinance.

Relevant here, Section 19-54 provides:

**Sec. 19-54. - Release of impounded vehicles.**

(a) Impounded motor vehicles shall be released by the police department or the operator of the police department's vehicle storage facility, after payment is made of any towing or storage charges or fees, only upon receipt of one (1) of the following:

---

[2] Crash reports, police reports, and towing service records indicate the City seized the Vehicles for reasons such as: blocking driveways, collisions rendering them disabled, the driver being arrested, and the driver being cited for driving with a suspended license. *See ECF No. 30-4, ECF No. 31-13; ECF No. 31-14*.

(1) Submission of certificate of title or other satisfactory proof that the person applying for the release is the owner of the vehicle.

(2) Submission of the certificate of title and of a current power of attorney duly executed by the owner requesting release to the person named therein and presenting same.

(3) ***Release of impounded vehicle to lienholder***. A motor vehicle which has not been claimed by the owner after ten (10) days of impoundment (including the day the vehicle arrived at the storage facility) and after the mortgage note is thirty (30) days delinquent, shall be released to the claimant identifying himself as lienholder or agent of the lienholder named on the certificate of title upon the submission of a surety bond from a city licensed corporate surety firm which shall indemnify, save and hold harmless the city from all damage, liability, costs, attorney's fees, expenses, actions, judgments and special proceedings that may arise, accrue or be brought against the city by reason of releasing the vehicle to the bonded vehicle claimant, up to the amount of the bond, and upon payment of towing charges and storage fees.

The surety bond shall be submitted at the police department vehicle storage facility and shall be in either the original mortgage amount of the vehicle or an amount equal to the current National Automobile Dealers Association book value plus ten (10) percent.

In the alternative, the lienholder may submit a non-vehicle-specific surety bond in the amount of fifty thousand dollars ($50,000.00) or more, against which the lienholder may repossess a number of vehicles with a cumulative value not exceeding ninety (90) percent of the bond amount.

A separate indemnification agreement shall be signed by the vehicle claimant who appears at the vehicle storage facility to take possession of the vehicle, and said claimant shall identify himself or herself as the lienholder or the lienholder's agent, and shall state that said claimant holds the City of San Antonio harmless and fully indemnified against any claims of loss of property which may arise out of the release of the vehicle.

The surety bond shall include a statement that:

1. The title owner is in default of his mortgage contract by virtue of being delinquent in a scheduled payment by at least thirty (30) days, that the person named in the bond is the lienholder or the legal agent of the lienholder being bonded, that the named lienholder has paramount right of possession of the vehicle, and is legally entitled to repossess same, or

2. That the title owner is in default of his mortgage contract by virtue of the seizure of the mortgaged vehicle by peace officers who have identified it as contraband and subject to confiscation under Chapter 59 of the Code of Criminal Procedure, thus entitling the lienholder to exercise a contractual right of repossession to preserve the mortgage collateral.

The signatory of the indemnification agreement and the surety bond, if signing as agent for a principal or as agent for or officer of a corporation, shall certify in writing and under oath before a notary public that he or she has full authority to execute the document on behalf of the corporation.

(b) Nothing herein shall prevent the release of any motor vehicle by any person upon the service of an order or judgment directing such release by a court of competent jurisdiction.

(c) The terms "motor vehicle," "lien," "owner," "mortgagee," "mortgagor," and "certificate of title" used herein shall have the same meanings as defined in Vernon's Ann. Civ. St. art. 6687-1.

*ECF Nos. 30-23; 31-15; 34-2* (emphasis added).

Ultimately, <u>Santander successfully retrieved four of the Vehicles,</u>[3] satisfying the conditions for release. *ECF Nos. 30 at 6–7; 30-1 at 14–15*. Santander paid a total of approximately $25,000 in storage fees to retrieve these four of the Vehicles. *Id. at 15; ECF No. 30 at 17, 84–85*.

As stipulated, after "Santander did not provide the requisite proof of the borrower's delinquency" or "a monetary default letter," <u>the City and Alanis auctioned and sold twenty-eight of the Vehicles.</u>[4] *ECF No. 107 at 3* (Cause No. 5:21-CV-00172); *ECF No. 30 at 16*. The auctions were held no less than twenty days after issuance of the Second Notice. *ECF No. 107 at 3* (Cause No. 5:21-CV-00172). Santander did not make a claim for excess proceeds via applicable available procedures for the auctioned vehicles, so no proceeds were distributed to Santander. *Id*.

---

[3] The "Mooso," "Salazar," "Hernandez," and "Tucker" vehicles. *ECF No. 30-1 at 14–15*.

[4] The "Ahuyon," "Angeles," "Barragan," "Briones," "Brooks," "Constancio," "Cortez," "Franklin," "Funderburk," "Gaeta," "Garcia, Antonio," "Garcia, Robert," "Goertz," "Gonzales," "Jimenez," "Jones," "Longoria," "Martinez," "Medina," "Munro," "Pineda," "Puente," "Savere," "Seals," "Stephens," "Tijerina," "Villareal," and "Woo" vehicles. *Id. at 13–14*.

The City and Alanis remain in possession of two of the Vehicles.[5] *ECF No. 30 at 6; ECF No. 30-1 at 13; ECF No. 31 at 94.*

## PROCEDURAL HISTORY

Beginning January 30, 2019, Santander filed a series of lawsuits against the City, Alanis, and other defendants in Bexar County, Texas. *See ECF No. 31-7.* On November 7, 2019, the 131st Judicial District Court (the "state district court") consolidated the lawsuits into a single matter under Cause No. 2019CI01960 ("the State Court Litigation"). *ECF No. 31-9.* Once consolidated, Santander filed a Second Amended Petition. *ECF No. 31-10 at 8.* The Second Amended Petition contains a schedule listing the twenty-eight vehicles at issue. *Id. at 8–9.*

In Response to Santander's Second Amended Petition, on February 21, 2020, the City filed a Plea to the Jurisdiction. *ECF No. 31-11.* Among other things, in the City's Plea to the Jurisdiction the City argued Santander could not overcome the City's immunity from suit. *See id.* On June 11, 2020, the state district court granted the City's Plea to the Jurisdiction and dismissed Santander's causes of action asserted against the City. *ECF No. 31-12.* The state district court did not dismiss all remaining defendants, however, for example the Texas Department of Motor Vehicles. *Id.*

Subsequently Santander appealed and, on December 30, 2020, the Fourth Court of Appeals in San Antonio, Texas, issued its judgment, mandate, and opinion, affirming the City's dismissal. *ECF Nos. 31-16, 31-17; see also Santander Consumer USA, Inc. v. City of San Antonio*, No. 04-20-00341-CV, 2020 WL 7753730 (Tex. App.—San Antonio, Dec. 30, 2020, no pet.).

On February 24, 2021, Santander filed its first federal Complaint in Cause Number 5:21-CV-00172. The Complaint similarly contains a schedule listing the twenty-eight vehicles at issue in the State Court Litigation but also included three additional vehicles. *ECF No. 1 at 22* (Cause

---

[5] The "Haynes" and "Needham" vehicles. *Id. at 13.*

No. 5:21-CV-00172). On August 22, 2023, the Court issued an Order staying Cause Number 5:21-CV-00172 "until all claims are fully and finally resolved in the first-filed, parallel state district court proceedings." *ECF No. 120 at 1* (Cause No. 5:21-CV-00172).

The next day, on August 23, 2023, Santander filed a Notice of Nonsuit in the State Court Litigation, seeking a dismissal of its causes of action against all remaining defendants. *ECF No. 31-18*. On September 22, 2023, the state district court issued its Order of Nonsuit, dismissing Santander's causes of action against all remaining defendants without prejudice and reciting it is a Final Judgment. *ECF No. 31-19*.

Following the conclusion of the State Court Litigation, on March 11, 2024, Santander filed its second federal Complaint in Cause Number 5:24-CV-00249. *ECF No. 1*. The Complaint in this case included one additional vehicle. *Id. at 3*.

On March 29, 2024, Santander filed its third federal Complaint in Cause Number 5:24-CV-00323. The Complaint in this case included two additional vehicles. *ECF No. 1 at 3* (Cause No. 5:24-CV-00323).

On June 3, 2024, finding Santander's three federal Complaints involved common questions of law and fact, the Court issued its Consolidation Order. *ECF No. 11*. In its Consolidation Order, the Court consolidated the three cases, designated 5:24-CV-00249 the lead case, and granted Santander leave to amend its Complaint. *ECF No. 11*.

Thereafter, on June 14, 2024, Santander filed its Amended Complaint. *ECF No. 18*. The Amended Complaint contains a schedule listing all thirty-four vehicles at issue in Cause Nos. 5:21-CV-00172, 5:24-CV-00249, and 5:24-CV-00323. *Id. at 21–22*. In its Amended Complaint, Santander asserts causes of action against the City and Alanis for:

(1) Violation of Santander's Fourth Amendment Rights pursuant to 42 U.S.C. § 1983;

(2) Violation of Santander's Fourteenth Amendment Rights pursuant to 42 U.S.C. § 1983; and

(3) Violation of Santander's Fifth Amendment Rights pursuant to 42 U.S.C. § 1983.

*Id. at 12–17.* As to these causes of action, Santander also seeks declaratory relief. *Id. at 12–17.* Santander asserts causes of action against Alanis only for:

(1) Replevin; and

(2) Conversion.

*Id. at 17–18.*

On December 16, 2024, Santander filed its Motion for Summary Judgment. *ECF No. 30.* On January 27, 2025, the City and Alanis filed separate Cross-Motions for Summary Judgment. *ECF Nos. 31, 34.* All parties filed responsive briefings. *See ECF Nos. 30, 31, 34, 43, 50, 51.*

Additionally, at the Court's request, all parties filed supplemental briefings limited to Santander's 42 U.S.C. § 1983 cause of action asserted against the City and Alanis for violation of its Fourteenth Amendment rights. *ECF Nos. 53, 54, 55, 56.*

## LEGAL STANDARD

Summary judgment is appropriate if the record shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Rodriguez v. Pacificare, Inc.*, 980 F.2d 1014, 1019 (5th Cir. 1993). "A fact is material only if its resolution would affect the outcome of the action." *Wiley v. State Farm Fire & Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009). A genuine dispute for trial exists if the record taken as a whole could lead a reasonable trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Bayle v. Allstate Ins. Co.*, 615 F.3d 350, 355 (5th Cir. 2010). Because there must be a genuine dispute of material fact, "the mere existence of *some* alleged factual

dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

The moving party bears the initial burden of informing the court of the basis for the motion and of identifying those portions of the record which demonstrate the absence of a genuine dispute of material fact or the appropriateness of judgment as a matter of law. *Celotex,* 477 U.S. at 323. The movant is not required to negate the elements of the nonmovant's case but may satisfy its summary judgment burden by demonstrating the absence of facts supporting specific elements of the nonmovant's cause(s) of action. *Little v. Liquid Air Corp.*, 37 F. 3d 1069, 1075, 1076 n. 16 (5th Cir. 1994). To satisfy this burden, the moving party must provide affidavits or identify any portion of the pleadings, discovery or admissions that demonstrate the absence of a triable dispute of material fact. *Celotex*, 477 U.S. at 323; *Rodriguez*, 980 F.2d at 1019. "If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Pioneer Expl., LLC v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014).

If the movant carries its initial burden, the burden shifts to the nonmovant to present competent summary judgment evidence showing the existence of a genuine dispute of material fact. *Matsushita*, 475 U.S. at 586–87. Upon the shifting burden, "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Brown v. City of Houston, Tex.*, 337 F.3d 539, 541 (5th Cir. 2003). The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which this evidence raises a genuine dispute of material fact. *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). Further, should the nonmoving party fail "to address or respond to a fact raised by the moving party and supported by

evidence, then the court may consider the fact as undisputed" and "[s]uch undisputed facts may form the basis for a summary judgment." *Broadcast Music*, *Inc. v. Bentley*, 5:16-CV-00394, 2017 WL 782932 at *2 (W.D. Tex. Feb. 28, 2017).

In determining the merits of a motion for summary judgment, a court has no duty to search the record for material fact issues or to find a party's ill-cited evidence. *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012); *Ragas*, 136 F.3d at 458. In addition, a court may not make credibility determinations or weigh the evidence and must view all evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150 (2000); *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005) (citations omitted).

Additionally, in reviewing "cross-motions for summary judgment, [the court] examine[s] 'each party's motion independently' and view[s] 'the evidence and inferences in the light most favorable to the nonmoving party.'" *Springboards To Educ., Inc. v. Hous. Indep. Sch. Dist.*, 912 F.3d 805, 811 (5th Cir. 2019) (quoting *JP Morgan Chase Bank, N.A. v. DataTreasury Corp.*, 823 F.3d 1006, 1011 (5th Cir. 2016)); *see also Shaw Constructors v. ICF Kaiser Eng'rs, Inc.*, 395 F.3d 533, 538–39 (5th Cir. 2004). "Cross-motions for summary judgment will not, in and of themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed." *Joplin v. Bias*, 631 F.2d 1235, 1237 (5th Cir. 1980). The rationale for this rule is that "each party moving for summary judgment may do so on different legal theories depending on different constellations of material facts." *Bricklayers, Masons & Plasterers Int'l Union of Am., Loc. Union No. 15, Orlando, Fla. v. Stuart Plastering Co.*, 512 F.2d 1017, 1023 (5th Cir. 1975).

Nonetheless, "cross-motions for summary judgment may be probative of the non-existence of a factual dispute when [] they demonstrate a basic agreement concerning what legal theories and material facts are dispositive." *Petro Harvester Operating Co. v. Keith*, 954 F.3d 686, 700 (5th Cir. 2020) (quoting *Bricklayers*, 512 F.2d at 1023).

## ANALYSIS

### I.    Santander's Cause of Action for Violation of Santander's Fourth Amendment Rights pursuant to 42 U.S.C. § 1983

In its Motion for Summary Judgment, Santander argues after "lawfully towing the [V]ehicles" the City and Alanis "rendered that seizure unreasonable by extending their interference with Santander's property rights beyond any legitimate need justified by [the community caretaking] exception." *ECF No. 30 at 49–50.* In their Responses and Cross-Motions for Summary Judgment, the City and Alanis counter this cause of action fails as a matter of law because Santander does not state a cause of action and, even if so, the impoundments were lawful and in furtherance of "community caretaking." *ECF No. 31 at 30–48; ECF No. 34 at 25–30*. In its Reply and Responses, Santander claims Defendants' argument fails because, "[o]nce [the City's] actions were no longer related to safety, it should have returned Santander's property." *ECF No. 43 at 35*.

As a threshold matter, the Court first addresses whether Santander states a cause of action. The parties concede the Fifth Circuit has yet to directly address whether a plaintiff may state a Fourth Amendment cause of action for unreasonable seizure in circumstances such as these where, as stipulated, an initial seizure of property by a defendant is reasonable but the defendant fails to return the property. *ECF No. 30 at 38; ECF No. 31 at 38–39; ECF No. 34 at 29–30*.

In support of their argument this cause of action fails as a matter of law because Santander does not state a cause of action, the City and Alanis point to cases from the First Circuit, Second Circuit, Sixth Circuit, Seventh Circuit, Eleventh Circuit and district courts within the Fifth Circuit that, with respect to the seizure of property, apply a brightline rule and limit the meaning of seizure to initial dispossession.[6] *ECF No. 31 at 38–39; ECF No. 34 at 29–30.*

Santander in turn points to cases from the Third Circuit and Ninth Circuit that do not apply a brightline rule and, thus, do not limit the meaning of seizure to initial dispossession.[7] Santander also points to language from the Supreme Court's opinions in *U.S. v. Jacobsen*, 466 U.S. 109 (1984), and *Manuel v. City of Joliet, Ill.*, 580 U.S. 357 (2017), and the Fifth Circuit's opinion in *U.S. v. McRae*, 702 F.3d 806 (5th Cir. 2012), *cert. denied* 569 U.S. 959 (2013), in support of its proposition that the meaning of seizure should be defined more broadly, to include a course of conduct that interferes with possessory rights. *ECF No. 30 at 47–53.*

In *U.S. v. McRae*, the Fifth Circuit acknowledged as to the Fourth Amendment there is no "precedent in this circuit staking a position in this split," but continued to state:

> The law neither clearly nor obviously limits the meaning of seizure to the initial moment of dispossession . . . We know that seizures of the person do not end at the initial moment of seizure . . . The imprecision in describing the temporal quality of seizure in the context of seizures of the person discredits any argument that it is clear or obvious that a seizure is over at the moment of initial dispossession in this context—that is, seizure of property.

---

[6] *Denault v. Alhern*, 857 F.3d 76 (1st Cir. 2017); *Shaul v. Cherry Valley-Springfield Cent. Sch. Dist.*, 363 F.3d 177 (2nd Cir. 2004); *Fox v. Van Oosterum*, 176 F.3d 342 (6th Cir. 1999); *Lee v. City of Chicago*, 330 F.3d 456 (7th Cir. 2003); *Case v. Eslinger*, 555 F.3d 1317 (11th Cir. 2009); *Taylor v. Irving Auto Pound*, No. 3:23-CV-00412, 2024 WL 3390565 (N.D. Tex. June 6, 2024), *R. & R. adopted*, No. 3:23-CV-00412, 2024 WL 3891835 (N.D. Tex. Aug. 20, 2024); *Henderson v. Mack*, No. 6:21-CV-00431, 2024 WL 823252 (E.D. Tex. Feb. 9, 2024), *R. & R. adopted*, No. 6:21-CV-00431, 2024 WL 821161 (E.D. Tex. Feb. 26, 2024), *appeal dismissed for want of prosecution*, No. 24-40184, 2024 WL 4253177 (5th Cir. June 20, 2024); *Reliford v. Craig*, No. 2:16-CV-00482, 2017 WL 6372634 (S.D. Tex. Nov. 22, 2017), *R. & R. adopted*, No. 2:16-CV-00482, 2017 WL 6375804 (S.D. Tex. Dec. 12, 2017).
[7] *Frein v. Pennsylvania State Police*, 47 F. 4th 247 (3rd Cir. 2022); *Brewster v. Beck*, 859 F.3d 1194 (9th Cir. 2017).

702 F.3d at 833. The Court finds this language from the Fifth Circuit persuasive and will assume without deciding that, for the purposes of the parties' motions and cross-motions for summary judgment, Santander states a cause of action.

Turning to the merits of the parties' motions and cross-motions for summary judgment, however, the Court finds Santander does not demonstrate it is entitled to judgment as a matter of law, but the City and Alanis do pursuant to the "community caretaking" exception to the Fourth Amendment's warrant requirement.

In its Motion for Summary Judgment, Santander presents out of circuit authority for its belief the community caretaking exception is inapplicable "as soon as" vehicles are removed from roadways and deposited in impound lots. *ECF No. 30 at 49*.

Regarding impoundment of a vehicle, though, the Fifth Circuit has not endorsed the bifurcated analysis of the "community caretaking" exception Santander advocates. In the Fifth Circuit, impoundment of a vehicle by police officers is permissible so long as it is carried out in furtherance of a community caretaking function. *U.S. v. Castro*, 166 F.3d 728, 734 (5th Cir. 1999). Community caretaking functions include removing "disabled or damaged vehicles," and "automobiles which violate parking ordinances, and which thereby jeopardize both the public safety and the efficient movement of vehicular traffic." *United States v. McKinnon*, 681 F.3d 203, 208 (5th Cir. 2012) (quoting *South Dakota v. Opperman*, 428 U.S. 364, 368 (1976)).

In determining whether impoundment of a vehicle was proper, the court focuses on "the reasonableness of the 'community caretaker' impound[ment] viewed in the context of the facts and circumstances encountered by the officer." *McKinnon*, 681 F.3d at 208. The court's determination regarding the reasonableness of impoundment of a vehicle is made "without reference to any standardized criteria," however, resolution of this issue frequently turns on whether officers

followed applicable local procedures established for impoundment of a vehicle. *See*, *e.g*, *United States v. Ponce*, 8 F.3d 989, 995-96 (5th Cir. 1993) (footnote omitted) ("The procedures authorized impoundment when '[t]he operator has been arrested and there is no responsible adult present to immediately take custody of the vehicle.'").

In light of this binding precedent, and because the Fifth Circuit has not endorsed the bifurcated analysis of the "community caretaking" exception Santander advocates, the Court finds Santander does not demonstrate it is entitled to judgment as a matter of law.

Additionally, in their Responses and Cross-Motions for Summary Judgment, the City and Alanis specifically argue the impoundments were lawful and in furtherance of "community caretaking." *ECF No. 31 at 30–48; ECF No. 34 at 25–30*. Competent summary judgment evidence submitted by the City (and Santander)—in the form of crash reports, police reports, and towing service records—"supports the conclusion that the [vehicles] [were] impounded in accordance with [the City's] community caretaking function." *Castro*, 166 F.3d at 734; *see ECF No. 30-4; ECF No. 31-13; ECF No. 31-14*. The City and Alanis therefore satisfy their summary judgment burden by demonstrating the absence of facts supporting specific elements of Santander's 42 U.S.C. § 1983 cause of action for violation of its Fourth Amendment rights. *Little v. Liquid Air Corp.*, 37 F. 3d 1069, 1075, 1076 n. 16 (5th Cir. 1994).

Because Santander fails to demonstrate why, in its view, "any legitimate need justified by the [community caretaking] exception" came to an end, presenting no competent summary judgment evidence showing the existence of a genuine dispute of material fact and only argument, the City and Alanis are entitled to judgment as a matter of law on this cause of action.

In sum, Santander presents out of circuit authority for its belief the community caretaking exception is inapplicable "as soon as" vehicles are removed from roadways and deposited in im-

pound lots, advocating the Court adopt the bifurcated analysis of the "community caretaking" exception, and this is not the current law in the Fifth Circuit. *ECF No. 30 at 49.*

The Court therefore finds Santander does not demonstrate it is entitled to judgment as a matter of law, but the City and Alanis do pursuant to the "community caretaking" exception to the Fourth Amendment's warrant requirement.

Accordingly, in this regard, Santander's Motion for Summary Judgment is **DENIED,** and the City's and Alanis' Cross-Motions for Summary Judgment are **GRANTED**.

The Court also notes for any reviewing court Texas Courts of Appeal have found "[a] city's impounding and auctioning of vehicles by law enforcement are governmental functions." *City of Dallas v. Ruffin*, No. 05-20-00646-CV, 2021 WL 3196963 at *4 (Tex. App.—Dallas July 28, 2021) (citing *Santander Consumer USA, Inc. v. City of San Antonio*, No. 04-20-00341-CV, 2020 WL 7753730 at *9–10 (Tex. App.—San Antonio, Dec. 30, 2020, no pet.); *City of El Paso v. Gomez-Parra*, 198 S.W.3d 364, 369 (Tex. App.—El Paso, 2006, no pet)). Specifically, "those acts [are] an extension of the City's police and fire protection and control function and regulation of traffic function." *City of Dallas*, 2021 WL 3196963 at *4; *but see Brewster v. City of Los Angeles*, 672 F. Supp. 3d 872, 936–945 (C.D. Cal. 2023) (finding the opposite).

Moreover, under the circumstances presented in this case, towing and impoundment of the Vehicles does not constitute a "seizure" in the context of the rights of a nonpossessory lienholder, such as Santander.[8] "A 'seizure' of property . . . occurs when 'there is some meaningful interference with an individual's *possessory* interests in that property.'" *Soldal v. Cook Cnty.*, 506 U.S. 56, 61 (1992) (emphasis added). The towing and impoundment of the Vehicles inter-

---

[8] *E.g., Toyota Motor Credit Corp. v. Borough of Wyoming, PA*, No. 3:23-CV-00377, 2025 WL 978209, at *7 (M.D. Pa. Mar. 31, 2025); *see also Santander Consumer USA, Inc. v. Cnty. of Suffolk*, No. 20-CV-02656, 2021 WL 4480574 (E.D.N.Y. Sept. 30, 2021) ("[I]t must be emphasized that unlike" titled vehicle owners, [Santander], as 'the innocent lienholder, does not have a present possessory right' to the seized vehicles." (internal citations omitted)).

fered with the possessory interests of the non-party customers, who owned the Vehicles and were in possession of the Vehicles until they were towed, but it had no impact on Santander's nonpossessory security interests. While the non-party customers' default may have conferred on Santander the self-help right of repossession—that is, a right to take possession of the Vehicles under certain circumstances—nonpossessory security interests do not become possessory security interests until the secured party takes possession after a default. *See* Tex. Bus. & Com. Code § 9.609 (providing, after default, a secured party may retake possession, but unless it can be retaken without breach of the peace, it must be retaken by legal process); U.C.C. § 9-601 cmt. 4 (2022) (stating that nonpossessory security interests are not indistinguishable from possessory security interests until after default *and the taking of possession*).[9] Here, Santander simply never took possession of the Vehicles at any point.

## II. Santander's Cause of Action for Violation of Santander's Fourteenth Amendment Rights pursuant to 42 U.S.C. § 1983

In its Motion for Summary Judgment, Santander argues although the City and Alanis provide a hearing to challenge the propriety of the tow and the towing and storage fees assessed, the City and Alanis violated its procedural due process rights, guaranteed by the Fourteenth Amendment, by failing to provide an additional hearing before "disposal-related deprivations." *ECF No. 30 at* 26. In their Responses and Cross-Motions for Summary Judgment, the City and Alanis counter Santander received all the process due to it. *ECF No. 31 at 48–76; ECF No. 34 at 30–36*. In its Reply and Responses, Santander claims the "position that due process does not apply to disposal-related deprivations . . . is insupportable." *ECF No. 43 at 14*.

The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner. *Breath v. Cronvich*, 729 F.2d 1006, 1010 (5th Cir. 1984)

---

[9] U.C.C. § 9-601 is codified in the Texas Business and Commerce Code at Section 9.601.

(citing *Mathews v. Eldridge,* 424 U.S. 319, 333 (1976)). In determining the type of hearing required, the Court must consider three distinct factors:

> (1) the private interest that will be affected by the official action, (2) the risk of an erroneous deprivation of such interest through the procedures used and the probable value, if any, of additional or substitute procedural safeguards, and (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.

*Id.* (citing *Mathews*, 424 U.S. at 335).

Under this framework, the Fifth Circuit has long recognized "prior notice and hearing is not required to tow illegally parked cars." *Breath*, 729 F.2d at 1010. Rather, "[w]hen a car is towed or impounded, some form of fair and impartial hearing at which an owner is provided an opportunity to challenge the lawfulness of removing his [or her] car and assessing charges against him [or her] must be provided within a reasonable time period." *Id*. at 1011.[10]

Specifically, Santander argues the City and Alanis violated its procedural due process rights by failing to provide an additional hearing before "disposal-related deprivations," such as: imposing conditions for the Vehicles' release; reviewing whether claimants complied with the conditions for the Vehicles' release; declaring a claimants' rights abandoned; deciding to sell the Vehicles; and keeping the proceeds. *ECF No. 30 at 30*.

Upon examination, however, the caselaw Santander cites does not support this proposition. The caselaw Santander cites indicates courts have found procedural due process violations

---

[10] Other Circuit Courts similarly have held the owners of towed vehicles—whether illegally parkerd, abandoned, or junk—are entitled to no less than post-deprivation notice and a hearing. See *French v. Koch's Body Shop*, 170 Fed. App'x. 997, 978 (8th Cir. 2006) (finding due process satisfied by post-seizure notice and meaningful opportunity to challenge tow); *Propert v. D.C.*, 948 F.2d 1327, 1332–33 (D.C. Cir. 1991) ("[e]very court which has considered the issue has held that the owners of towed vehicles–whether illegally parked, abandoned or junk–are entitled to no less than post-deprivation notice and a hearing"); *Scofield v. City of Hillsborough*, 862 F. 2d 759, 764 (9th Cir. 1988) (finding an officer's failure to provide post-deprivation hearing for towed car would violate due process); *Draper v. Coombs*, 792 F.2d 915, 923 (9th Cir. 1986) (holding towing statute unconstitutional where no provision for hearing); *Sutton v. City of Milwaukee*, 672 F.2d 644, 648 (7th Cir. 1982) (requiring post-towing notice and hearing for owners of abandoned and illegally parked cars); *Stypmann v. City of San Francisco*, 557 F.2d 1338, 1344 (9th Cir. 1977) (requiring prompt post-towing hearing).

for improper notice,[11] no hearings being provided at all,[12] and hearings being excessively de-layed.[13] Here, as stipulated: (1) after being towed to the VSF, for each of the Vehicles, Alanis sent Santander two Notices; (2) both the First Notice and the Second Notice "state that a lienholder—including Santander—may request a hearing pursuant to [C]hapter 2308 of the Tex-as Occupations Code and [C]hapter 683 of the Texas Transportation Code;" (3) Santander re-ceived all of the First Notices and Second Notices for the Vehicles.; and (4) Santander did not request any hearings for the Vehicles. *ECF No. 107 at 2–3* (Cause No. 5:21-CV-00172); *ECF No. 30-1 at 7, 8, 11*. Therefore, the caselaw Santander cites is inapplicable here—as is the caselaw Santander cites involving civil forfeiture,[14] seized weapons,[15] and cases that are readily factually and legally distinguishable.[16]

At bottom, Santander fails to direct the Court to a single case, and the Court is unable to locate a single case, where a vehicle owner or lienholder is provided a hearing to challenge the propriety of the tow and the towing and storage fees assessed and is provided an additional hear-ing prior to "disposal-related deprivations." The caselaw Santander cites that is most closely on

---

[11] *Todman v. Mayor and City Council of Baltimore*, 104 F.4th 479 (4th Cir. 2024); *Schneider v. Cnty. of San Diego*, 28 F.3d 89 (9th Cir. 1994), *as amended on denial of reh'g and reh'g en banc* (Oct. 11, 1994); *Matthias v. Bingley*, 906 F.2d 1047 (5th Cir. 1990), *opinion modified on denial of reh'g*, 915 F.2d 946 (5th Cir. 1990); *TD Auto Fin. LLC v. Cnty. of Putnam*, No. 7:21-CV-09080, 2023 WL 6295116 (S.D.N.Y. Sept. 27, 2023); *Am. Honda Fin. Corp. v. City of Revere*, 471 F. Supp. 3d 399 (D. Mass. 2020).

[12] *Henry v. City of Middletown, Ohio*, 655 Fed. App'x. 451 (6th Cir. 2016) (unpublished); *Lawrence v. Reed*, 406 F.3d 1224 (10th Cir. 2005); *Alexandre v. Cortes*, 140 F.3d 406 (2d Cir. 1998); *Propert v. D.C.*, 948 F.2d 1327 (D.C. Cir. 1991); *Morgan v. Wofford*, 472 F.2d 822 (5th Cir. 1973); *Santander Consumer USA, Inc. v. Cnty. of Nassau*, 623 F. Supp. 3d 6 (E.D.N.Y. 2022); *HVT, Inc. v. Port Auth. of New York and New Jersey*, No. 1:15-CV-05867, 2018 WL 3134414 (E.D.N.Y. Feb. 15, 2018), *R. & R. adopted*, No. 1:15-CV-05867, 2018 WL 1409821 (E.D.N.Y. Mar. 21, 2018); *Craig v. Carson*, 449 F. Supp. 385 (M.D. Fla. 1978).

[13] *Coleman v. Watt*, 40 F.3d 255 (8th Cir. 1994).

[14] *Ford Motor Credit Co. v. NYC Police Dept.*, 503 F.3d 186 (2d Cir. 2007).

[15] *Walters v. Wolf*, 660 F.3d 307 (8th Cir. 2011); *Lathon v. City of St. Louis*, 242 F.3d 841 (8th Cir. 2001).

[16] *United States v. James Daniel Good Real Property*, 510 U.S. 43, 55 (1993); *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled by Daniels v. Williams*, 474 U.S. 327 (1986); *Memphis Light, Gas and Water Div. v. Craft*, 436 U.S. 1 (1978); *Goss v. Lopez*, 419 U.S. 565 (1975); *Mullane v. C. Hanover Bank & Tr. Co.*, 339 U.S. 306 (1950); *People of Porto Rico v. Title Guar. & Sur. Co.*, 227 U.S. 382 (1913); *Sheppard Federal Credit Union v. Palmer*, 408 F.2d 1369 (5th Cir. 1969); *Brewster v. City of Los Angeles*, 672 F. Supp. 3d 872 (C.D. Cal. 2023); *Shaheed v. City of Wilmington*, No. 1:21-CV-01333, 2022 WL 16948762 (D. Del., Nov. 15, 2022); *Rosemont Taxicab Co. v. Philadel-phia Parking Auth.*, 327 F. Supp. 3d 803 (E.D. Pa. 2018); *Harrell v. City of New York*, 138 F. Supp. 3d 479 (S.D.N.Y. 2015); *Spann v. City of Dallas*, 235 S.W. 513 (Tex. 1921).

point are decisions considering what are known as "Scofflaw" or "Boot-and-Tow" Programs within the Second Circuit.[17] As stated, however, courts have found procedural due process violations in those cases for no hearings being provided at all—which is not the case here.

Additionally, in their Responses and Cross-Motions for Summary Judgment, the City and Alanis specifically argue Santander received all the process due to it. *ECF No. 31 at 48–76; ECF No. 34 at 30–36*. Competent summary judgment evidence submitted by the City and Alanis demonstrates Santander received notice of the conditions for release of the Vehicles and how to satisfy the conditions for release of the Vehicles and retrieve them, as well as notice the Vehicles would be deemed abandoned and sold if the Vehicles were not retrieved. *ECF No. 107 at 2* (Cause No. 5:21-CV-00172); *ECF No. 30-1 at 7, 11; ECF Nos. 31-3, 31-4*. These notices clearly provided Santander the requisite opportunity to be heard and details as to its right to reclaim the Vehicles. Further, the City points to deposition testimony indicating Alanis never refused a request from Santander to hold a vehicle from being sold at auction if Santander expressed a desire to repossess. *ECF No. 31-23 at 32; see also ECF No. 30-26 at 11*. Alanis in turn points to the State Court Litigation wherein Santander "concedes it did not comply with Section 19-54 of the Ordinance." *Santander Consumer USA, Inc. v. City of San Antonio*, No. 04-20-00341-CV, 2020 WL 7753730 at *9–10 (Tex. App.—San Antonio, Dec. 30, 2020, no pet.). The City and Alanis therefore satisfy their summary judgment burden by demonstrating the absence of facts support-

---

[17] *See, e.g., Mercedes-Benz Fin. Services USA, LLC v. City of New York*, 770 F. Supp. 3d 643 (S.D.N.Y. 2025) (collecting cases); *see also HVT*, 2018 WL 3134414, at *9 (declining to apply the *Mathews* factors because it was "clear" the Port Authority could not "summarily deprive Plaintiff of its property without any opportunity for a hearing"); *Cnty. of Nassau*, 623 F. Supp. 3d at 18–19 (concluding consideration of the *Mathews* factors were unnecessary because the defendant "agree[d] that" its Scofflaw program did "not give a lienholder the opportunity to contest the conditions of release or the towing company's assertion of a lien (citing *HVT*, 2018 WL 3134414, at *8)); *Toyota Lease Tr. v. Vill. of Freeport*, No. 2:20-CV-02207, 2023 WL 4443992, at *9–10 (E.D.N.Y. Jan. 24, 2023) (declining to apply *Mathews* because the defendant "did not provide opportunity for a hearing"), *R. & R. adopted*, 2023 WL 4449333 (E.D.N.Y. Mar. 30, 2023); *TD Auto*, 2023 WL 6295116, at *11 (holding the plaintiff "did not have any formal opportunity to be heard"); *Santander Consumer USA, Inc. v. City of Yonkers*, No. 7:22-CV-08870, 2024 WL 4817649 at *10–11 (S.D.N.Y. Nov. 18, 2024) (noting the defendant's "policy provide[d] no opportunity for a hearing").

ing specific elements of Santander's 42 U.S.C. § 1983 cause of action for violation of its Fourteenth Amendment rights. *Little v. Liquid Air Corp.*, 37 F. 3d 1069, 1075, 1076 n. 16 (5th Cir. 1994).

Because Santander fails to demonstrate how the City, and Alanis by proxy, violated its procedural due process rights, presenting no competent summary judgment evidence showing the existence of a genuine dispute of material fact and only argument, the City and Alanis are entitled to judgment as a matter of law on this cause of action.

Accordingly, in this regard, Santander's Motion for Summary Judgment is **DENIED,** and the City's and Alanis' Cross-Motions for Summary Judgment are **GRANTED**.

The Court also notes for any reviewing court—to the extent Santander attacks the conditions for release[18,19,20,21] of the Vehicles—Santander does not challenge any underlying state statute, and it appears Santander chose not to avail itself of additional avenues available to it.

---

[18] In its Motion for Summary Judgment, Santander also criticizes what it terms "San Antonio's *ex parte* disposal policy" of "deeming vehicles abandoned." *ECF No. 30 at 31–36*. In its Cross-Motion for Summary Judgment and Response, Alanis states:

> Santander is simply wrong. As United States District Court Judge Alan Albright explained in *Lewis v. TitleMax of Texas, Inc.*, 543 F. Supp. 3d 452, 458-59 (W.D. Tex. 2021), Texas's regulatory code for foreclosure sales of vehicles provides that "failure of the owner or lienholder to claim the vehicle before the date of sale is . . . a waiver of all right, title, or interest in the vehicle." TEX. OCC. CODE ANN. § 2303.154(c). Moreover, once a lienholder waives its right, title, or interest under TEX. OCC. CODE § 2303.154(c) in a vehicle previously thought to be collateral and, thereby, consents to its disposal (sale at auction)—as Santander did repeatedly with the Vehicles in the present case—then by definition, and as a matter of law, the vehicle ceases to be the lienholder's "collateral" under the Texas UCC (TEX. BUS. & COM. CODE § 9.102(12)(A)), which defines "collateral" as property "subject to a security interest."

*ECF No. 34 at 35*. In its Reply and Response, Santander fails to address this argument and authority. *See ECF No. 43*.

[19] In its Motion for Summary Judgment, Santander also criticizes the fact it must request a hearing to challenge the propriety of the tow and the towing and storage fees assessed, stating the City and Alanis should initiate such a hearing. *ECF No. 30 at 43* (citing *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 799 (1983); *Fuentes v. Shevin*, 407 U.S. 67, 80 (1972); *Ford Motor Credit Co.*, 503 F.3d at 193; *HVT*, 2018 WL 3134414, at *9. Because the caselaw Santander cites does not support this proposition, in this regard, Santander's Motion for Summary Judgment is also denied.

[20] In its Motion for Summary Judgment, Santander also criticizes what it terms an "impossibility trap," wherein— because of the Ordinance's requirement Santander present proof a Vehicle owner's mortgage note is thirty days delinquent prior to release to Santander—"Santander *might* automatically lose its collateral any time [a Vehicle] is

For example, regarding repossession, Section 19-54(b) of the Ordinance states:

(b) Nothing herein shall prevent the release of any motor vehicle by any person upon the service of an order or judgment directing such release by a court of competent jurisdiction.

*ECF Nos. 30-23; 31-15; 34-2*. While Santander argues it was entitled to "immediate" repossession, it is not clear Santander pursued any judicial, or even non-judicial, means of repossession prior to the auctioning and selling of twenty-eight of the Vehicles.[22]

As another example, regarding fees[23], the retail installment contracts between the non-party customers and Santander appear to have contemplated this scenario. *See ECF No. 30-2*. The retail installment contracts state:

You will not allow the vehicle to be seized or placed in jeopardy or used illegally.

. . .

If a third party takes a lien or claim against or possession of the vehicle, we may pay the third party any cost required to free the vehicle from all liens or claims. We may immediately demand that you pay us the amount paid to the third party for the vehicle. If you do not pay this amount, we may repossess the vehicle and add that amount to the amount you owe. If you do not repossess the vehicle, we may still demand that you pay us, but we cannot compute a finance charge on this amount.

*Id. at 5*. Presumably, Santander chose this avenue as to four of the Vehicles it successfully retrieved.[24] Santander's reasoning for declining to do so as to the remaining Vehicles is unclear.

---

impounded and the debtor's payment is current." *ECF No. 30 at 31*. Because Santander does not allege this scenario occurred as to the Vehicles that are the subject of this suit, the Court need not address these allegations.

[21] In its Motion for Summary Judgment, Santander also criticizes the City acts with a "profit" motive. *ECF No. 30 at 14, 31*. Because Santander offers no competent summary judgment evidence to support this proposition, the Court need not address these allegations.

[22] The "Ahuyon," "Angeles," "Barragan," "Briones," "Brooks," "Constancio," "Cortez," "Franklin," "Funderburk," "Gaeta," "Garcia, Antonio," "Garcia, Robert," "Goertz," "Gonzales," "Jimenez," "Jones," "Longoria," "Martinez," "Medina," "Munro," "Pineda," "Puente," "Savere," "Seals," "Stephens," "Tijerina," "Villareal," and "Woo" vehicles. *Id. at 13–14*.

[23] *See* Tex. Occ. Code § 2303.156(a) ("A lienholder who repossesses a vehicle delivered to a vehicle storage facility is liable to the operator of the facility for any money owed to the operator in relation to delivery of the vehicle to or storage of the vehicle in the facility regardless of whether an amount accrued before the lienholder repossessed the vehicle.").

[24] The "Mooso," "Salazar," "Hernandez," and "Tucker" vehicles. *ECF No. 30-1 at 14–15*.

As a final example, a vehicle owner or lienholder may recover funds amounting to the excess proceeds for a vehicle within 90 days of the auction. *See* Tex. Occ. Code § 2303.157(b); Tex. Transp. Code § 683.015(a), (b). After the 90-day period, the City deposits the proceeds left unclaimed by the owner or lienholder in an account used for the payment of auction, towing, and storage fees—along with other operational costs from the sale of other items—not otherwise covered. Tex. Transp. Code § 683.015(c). Here, Santander did not make a claim for excess proceeds via applicable available procedures for the auctioned vehicles, so no proceeds were distributed to Santander. *ECF No. 107 at 3* (Cause No. 5:21-CV-00172).

That Santander did not take advantage of these avenues available to it does not lead the Court to the conclusion the City and Alanis deprived Santander of procedural due process. *See Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 434 n.7 (1982).

**III.    Santander's Cause of Action for Violation of Santander's Fifth Amendment Rights pursuant to 42 U.S.C. § 1983**

In its Motion for Summary Judgment, Santander argues the City and Alanis violated its rights, guaranteed by the Takings Clause of the Fifth Amendment, by:

(1)    "[D]eeming the liens to be abandoned and then selling the vehicles;"

(2)    "[D]emand[ing] that Santander pay thousands of dollars as an alternative;" and

(3)    "Continuing [or] prolong[ing] possession."

*ECF No. 30 at 58*. In their Responses and Cross-Motions for Summary Judgment, the City and Alanis counter this cause of action fails as a matter of law because none of the Vehicles were taken for public use. *ECF No. 31 at 76–82; ECF No. 34 at 36–39*. In its Reply and Responses, citing the Fifth Circuit's opinion in *Baker v. City of McKinney, Tex.*, 84 F.4th 378 (5th Cir. 2023), Santander claims the City and Alanis' actions constitute a compensable taking because

"[n]one of the actions authorized by [the City's] impounding policy . . . were objectively necessary to urgent law enforcement needs." *ECF No. 43 at 39*.

The Supreme Court has long recognized "[t]he government may not be required to compensate an owner for property which it has already lawfully acquired under the exercise of governmental authority other than the power of eminent domain." *Bennis v. Michigan*, 516 U.S. 442, 452 (1996). Consequently, there is broad consensus "the towing and subsequent storage of vehicles does not constitute a public use."[25]

In light of this broad consensus, and because the authority it cites is distinguishable[26], the Court finds Santander does not demonstrate it is entitled to judgment as a matter of law.

Additionally, in their Responses and Cross-Motions for Summary Judgment, the City and Alanis highlight this broad consensus and specifically argue the Vehicles were not taken for public use. *ECF No. 31 at 30–48; ECF No. 34 at 25–30*. As stated, competent summary judgment evidence submitted by the City (and Santander)—in the form of crash reports, police reports, and towing service records—"supports the conclusion that the [vehicles] [were] impounded in accordance with [the City's] community caretaking function." *Castro*, 166 F.3d at 734; *see ECF*

---

[25] *T&W Holding Co., LLC v. City of Kemah, Texas*, No. 3:22-CV-00007, 2024 WL 3541579 at *7 (S.D. Tex. July 25, 2024), *R. & R. adopted*, No. 3:22-CV-00007, 2024 WL 4149770 (S.D. Tex. Sept. 11, 2024) (quoting *Brite Fin. Servs., LLC v. Bobby's Towing Serv., LLC*, 461 F. Supp. 3d 549, 558 (E.D. Mich. 2020)); *see also Mercedes-Benz*, 770 F. Supp. 3d at 661–64; *Tate v. Dist. of Columbia*, 627 F.3d 904, 909 (D.C. Cir. 2010) ("Nor did the impoundment and subsequent sale of Tate's booted vehicle constitute a taking for a public use for which she was entitled to compensation under the Fifth Amendment's Takings Clause."); *Oko v. City of Cleveland*, No. 1:21-CV-02222, 2023 WL 4405270, at *13 (N.D. Ohio July 7, 2023) (collecting cases discussing why "the towing and impoundment of a vehicle for violation of municipal ordinances does not constitute a taking 'for public use' "); *Bey v. Hood*, No. 6:19-CV-00227, 2020 WL 3039147, at *7 (E.D. Tex. Mar. 30, 2020) ("Here, it is not in dispute that Plaintiff's property was not taken for public use, but rather her vehicle was towed because there was no licensed driver and it was not registered or insured in accordance with the laws. As such, any takings claim fails as a matter of law.").

[26] In *Baker v. City of McKinney, Tex.*, 84 F.4th 378 (5th Cir. 2023), the Fifth Circuit "declined to adopt the city's broad assertion that the Takings Clause never requires compensation when a government agent destroys property pursuant to its police power." *Baker v. City of McKinney, Texas*, 145 S. Ct. 11, 12 (2024). "Instead, the Fifth Circuit adopted a narrower rule that it understood to be compelled by history and precedent: The Takings Clause does not require compensation for damaged property when it was 'objectively necessary' for officers to damage the property in an active emergency to prevent imminent harm to persons." *Id*. The *Baker* Court, did not address "property which [a government entity] has already lawfully acquired under the exercise of governmental authority other than the power of eminent domain." *Bennis v. Michigan*, 516 U.S. 442, 452 (1996).

23

*No. 30-4; ECF No. 31-13; ECF No. 31-14*. These crash reports, police reports, and towing service records indicate the City seized the Vehicles for reasons such as: blocking driveways, collisions rendering them disabled, the driver being arrested, and the driver being cited for driving with a suspended license. *See ECF No. 30-4, ECF No. 31-13; ECF No. 31-14*. The City and Alanis therefore satisfy their summary judgment burden by demonstrating the absence of facts supporting specific elements of Santander's 42 U.S.C. § 1983 cause of action for violation of its Fifth Amendment rights. *Little v. Liquid Air Corp.*, 37 F. 3d 1069, 1075, 1076 n. 16 (5th Cir. 1994).

Because Santander fails to demonstrate how the City, and Alanis by proxy, acted outside its role as a community caretaker, presenting no competent summary judgment evidence showing the existence of a genuine dispute of material fact and only argument, the City and Alanis are entitled to judgment as a matter of law on this cause of action.

Accordingly, in this regard, Santander's Motion for Summary Judgment is **DENIED,** and the City's and Alanis' Cross-Motions for Summary Judgment are **GRANTED**.

## IV.    Santander's Cause of Action for Replevin

In its Motion for Summary Judgment, Santander does not address its cause of action asserted against Alanis for replevin put forth in its Amended Complaint. *See ECF No. 18 at 17–18; ECF No. 30*. In its Response and Cross-Motion for Summary Judgment, Alanis argues this cause of action fails as a matter of law because Santander does not state a cause of action. *ECF No. 34 at 43–44*. In its Reply and Response to Alanis' Cross-Motion for Summary Judgment, Santander again does not address its cause of action asserted against Alanis for replevin. *ECF No. 43*.

The Court recognizes the well-established rule that "[i]f a party fails to assert a legal reason why summary judgment should not be granted, that ground is waived." *Blackwell v. Laque*,

275 Fed. App'x. 363 (5th Cir. 2008) (unpublished) (citing *Vaughner v. Pulito,* 804 F.2d 873, 877 n. 2 (5th Cir.1986); *e.g., Knudsen v. Bd. of Sup'rs of Univ. Of La. Sys.*, No. 14-382, 2015 WL 1757695, at *1 (E.D. La. April 16, 2015) ("A party's failure to brief an argument in response to a summary judgment motion waives that argument."). Because Santander fails to respond to Alanis' specific arguments in its Cross-Motion for Summary Judgment, Santander waives any contentions regarding its cause of action against Alanis for replevin.

Accordingly, in this regard, Alanis' Cross-Motion for Summary Judgment is also **GRANTED**.

### V.    Santander's § 1983 Cause of Action for Conversion

In its Motion for Summary Judgment, Santander does not meaningfully address its cause of action asserted against Alanis for conversion put forth in its Amended Complaint. *ECF Nos. 18 at 18, 30 at 66*. In its Response and Cross-Motion for Summary Judgment, Alanis argues this cause of action fails as a matter of law because Santander cannot prove the elements of this cause of action. *ECF No. 34 at 42–43*. In its Reply and Response to Alanis' Cross-Motion for Summary Judgment, Santander does not address the elements of this cause of action. *ECF No. 43*.

The elements of a conversion cause of action are:

> (1) the plaintiff owned or had possession of the property or entitlement to possession; (2) the defendant unlawfully and without authorization assumed and exercised control over the property to the exclusion of, or inconsistent with, the plaintiff's rights as an owner; (3) the plaintiff demanded return of the property; and (4) the defendant refused to return the property.

*Universal Plant Servs., Inc. v. Dresser-Rand Grp., Inc.*, 571 S.W.3d 346, 363 (Tex. App.—Houston [1st Dist.] 2018, no pet.).

In its Motion for Summary Judgment, Santander limits its argument regarding this cause of action to the following paragraph:

> Under Texas law conversion is established where a person interferes with a lienholder's attempt to take possession of a vehicle pursuant to its rights as secured creditor. For the purpose, the lienholder is not required to prove a breach of the financing agreement or that the lienholder has a right to immediate possession. *John Deloach Ent.*, 582 S.W.3d at 596. Here, Wrecker admits that it sold 28 vehicles in which Santander held liens and thereby wiped-out Santander's liens. Wrecker admits that it kept two vehicles to this day, and that it detained 4 vehicles for an extended period of time to force Santander to pay thousands for their release. All such actions were unconstitutional, and thus also constitute conversion *per force*. Santander's damages for conversion are the same as the damages for violations under Section 1983.

*ECF No. 30 at 66*. As stated, in determining the merits of a motion for summary judgment, a court has no duty to search the record for material fact issues or to find a party's ill-cited evidence. *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012); *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). Santander points to no competent summary judgment evidence demonstrating it is entitled to judgment as a matter of law.

Additionally, in its Response and Cross-Motion for Summary Judgment, Alanis specifically argues "Santander has not shown—and cannot show—how Alanis in any way acted unlawfully or without authorization by not turning the Vehicles over to Santander without Santander's having presented the proper paperwork." *ECF No. 42–43*. Alanis therefore satisfies its summary judgment burden by demonstrating the absence of facts supporting specific elements of Santander's conversion cause of action. *Little v. Liquid Air Corp.*, 37 F. 3d 1069, 1075, 1076 n. 16 (5th Cir. 1994). Because Santander fails to respond to Alanis' specific arguments in its Reply and Response to Alanis' Cross-Motion for Summary Judgment, presenting no competent summary judgment evidence showing the existence of a genuine dispute of material fact and only argument, Alanis is entitled to judgment as a matter of law on this cause of action.

Accordingly, in this regard, Santander's Motion for Summary Judgment is **DENIED,** and Alanis' Cross-Motion for Summary Judgment is **GRANTED**.

## VI.    Santander, the City, and Alanis' Additional Arguments

As no causes of action remain, the Court need not address the parties' additional arguments relating to Santander's requests for declaratory relief and the City and Alanis' affirmative defenses.

## VII.    Alanis' Request for Attorney's Fees

Regarding Alanis' request for attorney's fees pursuant to 42 U.S.C. § 1988, if a prevailing party qualifies for an award of attorney's fees, counsel must follow the procedural requirements set out in Federal Rule of Civil Procedure 54(d)(2) and Local Rule CV-54. Accordingly, Alanis' request for attorney's fees pursuant to 42 U.S.C. § 1988 is **DENIED**.

## CONCLUSION

For the reasons stated above, Santander's Motion for Summary Judgment, (*ECF No. 30*), is **DENIED**; the City's Cross-Motion for Summary Judgement, (*ECF No. 31*), is **GRANTED**; and Alanis' Cross-Motion for Summary Judgment, (*ECF No. 34*), is **GRANTED**.

Consequently, as no causes of action remain, the final pretrial conference and trial settings in this matter are **TERMINATED** and any additional pending motions are **DENIED AS MOOT**.

The Clerk of Court is **DIRECTED** to close this case.

It is so ORDERED.
SIGNED this 5th day of August, 2025.

_____
JASON  PULLIAM
UNITED STATES DISTRICT JUDGE